**Opinion filed November 27, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00160-CV

_____

## IN THE INTEREST OF J.M.S., A CHILD

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CV 12-04-110**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order terminating the parental rights of the mother and the unknown father of J.M.S. The mother filed a notice of appeal. We affirm.

#### I. *Issues*

On appeal, the mother presents one issue with five subparts in which she challenges the legal and factual sufficiency of the evidence to support the trial court's findings. The mother specifically asserts that the evidence is insufficient to show that she placed J.M.S. in surroundings that endangered J.M.S., that she knowingly engaged in conduct that endangered J.M.S., that she failed to obey a

court order, that she is unable to meet J.M.S.'s needs due to a mental or emotional illness or mental deficiency, and that termination of her parental rights is in J.M.S.'s best interest.

## II. *Sufficiency Standards of Review*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

A trial court may also terminate a parent's rights pursuant to Section 161.003 of the Family Code if the court finds by clear and convincing evidence (1) that the parent has a mental or emotional illness or a mental deficiency that renders the parent unable to provide for the physical, emotional, and mental needs of the child; (2) that the illness or deficiency will continue to render the parent unable to provide for the child's needs until the 18th birthday of the child; (3) that the Department of Family and Protective Services has been the managing conservator of the child for at least six months; (4) that the Department has made reasonable efforts to return the child to the parent; and (5) that termination is in the best interest of the child. *Id.* § 161.003 (West 2008).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

### III. *Analysis*

In this case, the trial court found that the mother had committed three of the acts listed in Section 161.001(1)—those found in subsections (D), (E), and (O)—and that termination would be in the best interest of J.M.S. Specifically, the trial court found that the mother had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being, had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child, and had failed to comply with the provisions of a court order that established the actions necessary for the mother to obtain the return of the child who had been in the conservatorship of the Department for at least nine months as a result of the child's removal from the parent for abuse or neglect. The

trial court also found that termination of the mother's rights was appropriate under Section 161.003 due to the mother's mental or emotional illness or mental deficiency.

The record shows that J.M.S. was eight years old at the time of trial and had been living in a foster home since being removed from her mother's care in March 2012. The mother was thirty-seven years old. She was not employed, but she received SSI and Social Security because of some type of disability; she had "no idea" what type of disability but thought that it was "[p]robably a mental condition." The mother had lived with her parents all of her life until the Department became involved in this case in December 2011—when the mother's father, David, was arrested for possessing child pornography. At that time, the Department told the mother that J.M.S. could not live in that home, so the mother and J.M.S. went to Chicago, Illinois, to stay with the mother's half-sister. The mother testified that she and J.M.S. stayed there for "[p]robably a few years," but the mother agreed that she has difficulty keeping up with time and that it was possible they only stayed in Chicago a couple of months. The mother and J.M.S. moved back to Texas from Chicago in March 2012. At that time, the Department took custody of J.M.S., and the mother moved in with her parents.

About two months after moving back to Texas, the mother moved into a place of her own. The record shows that the mother had a difficult time maintaining a stable home and that she moved back in with her father whenever she was in between places. At the time of trial, the mother was engaged; she and her fiancé lived together in a two-bedroom house. However, prior to becoming engaged, the mother had allowed inappropriate people to stay at her residence and had permitted a "tent city" in her backyard where homeless people or vagrants camped. Several of the homeless people eventually moved into the mother's home. One of them was a registered sex offender whose conviction involved a

4

child. Even after the Department informed the mother of these issues, she continued to allow the homeless people, including the convicted sex offender, to live in her home. On one visit, the caseworker observed two men consuming alcohol at 8:30 in the morning, whiskey bottles and beer cans strewn in the house, a demolished kitchen table, and a broken flat-screen television. The caseworker testified that the police were summoned to the mother's residence numerous times for a variety of reasons that seemed to involve the men that were in and out of the mother's residence and that included one allegation of sexual assault of which the mother was the victim. Despite this, the mother continued to leave her windows and doors unlocked. The caseworker feared for her own safety and took somebody with her when she went to visit the mother. She believed that the mother was just too trusting and did not comprehend what was at risk.

The mother testified that she used to take prescription medications, although she had "no idea" why, and that she no longer took them because her doctor told her to quit taking her medications. The caseworker testified that the mother failed to comply with the provisions of the court order regarding MHMR. The mother testified that she had never heard of the word "depression" and did not know what "diagnosed" meant. Seven times while this case was pending, the mother called for an ambulance because she felt lightheaded or felt her heart fluttering. The mother's fiancé suffered from post-traumatic stress disorder and, about two months prior to the final hearing, was hospitalized for one week in a psychiatric facility due to suicidal thoughts. According to both the mother and her fiancé, they argue quite a bit.

The mother testified that she knew her father had child pornography on his computer. J.M.S. was also aware of the child pornography and had "witness[ed] some things on the computer she shouldn't have seen." Although the mother said she would not allow her father to have contact with J.M.S. if J.M.S. were returned

to the mother, the evidence showed that the mother "still relies on her father greatly."

The mother worked hard trying to make the changes necessary for J.M.S. to be returned to her care. And it is clear that the mother loves J.M.S. and that J.M.S. also loves her mother. However, the evidence at trial showed that the mother is not capable of providing for the physical, emotional, and mental needs of J.M.S. or of making decisions that are in the best interest of J.M.S. The caseworker testified that the mother had a mental or emotional illness or a mental deficiency that rendered her unable to provide for the needs of J.M.S., and the caseworker believed that such deficiency and inability would continue until J.M.S.'s eighteenth birthday. The record reflects that the Department made reasonable efforts to return J.M.S. to the mother.

The caseworker and the child's court-appointed special advocate testified that it would be in J.M.S.'s best interest to terminate the mother's parental rights. The caseworker recommended the long-term placement of J.M.S. with her aunt in Chicago. The aunt and J.M.S. have become attached, and the aunt wants what is best for J.M.S., including a stable home. The caseworker testified that J.M.S. is ready to move in with her aunt and is excited about that prospect.

The Department produced clear and convincing evidence from which the trial court could reasonably have formed a firm belief that either (1) the mother had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of J.M.S. by allowing J.M.S. to live in the father's home where she was exposed to child pornography[1] or (2) the mother had a mental or emotional illness or a mental

---

[1]Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the mother's challenges to the sufficiency of the evidence with respect to the trial court's findings under Section 161.001(1)(D) and (O). *See* TEX. R. APP. P. 47.1.

deficiency that rendered her unable to provide for the physical, emotional, and mental needs of J.M.S. and will continue to render her unable to provide for J.M.S.'s needs until J.M.S. is eighteen years old. *See* FAM. §§ 161.001(1)(E), 161.003. The trial court could also have found by clear and convincing evidence that the Department had been the managing conservator of J.M.S. for at least six months, that the Department had made reasonable efforts to return the child to the parent, and that termination would be in the best interest of J.M.S.

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of J.M.S. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the mother, the criminal conduct of the mother's father—involving child pornography—upon whom the mother relied for assistance, the parental abilities of the aunt, the plans for the child by the Department, the instability of the mother's home, the stability of the proposed placement with the child's aunt, and the mother's inability to comprehend the dangers associated with various situations, we hold that the evidence is both legally and factually sufficient to support the finding that termination of the mother's parental rights is in the best interest of J.M.S. *See id.* We cannot hold that the finding as to best interest is not supported by clear and convincing evidence. The mother's issue on appeal is overruled.

IV. *This Court's Ruling*

We affirm the trial court's order of termination.

JOHN M. BAILEY

JUSTICE

November 27, 2013

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.